## Ely Jellico Coal Company, et al. v. Matthews.

(Decided September 26, 1911.)

### Appeal from Knox Circuit Court.

Coal Company—Officers of—Action by for Salaries—Evidence.—In an action by certain officers of a coal company for compensation for services rendered, the evidence examined and held that the labor was performed without any intention of being paid for it, and that such intention continued until estrangement among the management arose.

H. G. FAULKNER, W. E. FAULKNER, B. B. GOLDEN, H. C. FAULKNER, JR. and J. MORGAN CHINN for appellant.

J. M. ROBERSON, JAS. D. BLACK, PITZER D. BLACK, J. D. TUGGLE and D. K. RAWLINGS for appellee.

Opinion of the Court by Judge Nunn—Affirming.

About the year 1900 Harrison Hughes, J. D. Faulkner, J. P. Gaddy and L. F. Stanfill owned several hundred acres of valuable coal land in Ely Hollow, Knox County, Kentucky. They formed soon after that time what is known as the "Ely Jellico Coal Company," and took stock in it in proportion to their interest in the land; Hughes took about forty per cent. of the stock, Stanfill about four and Faulkner and Gaddy the remainder. They began work to open a mine; tipples and inclines were built and other necessary work done. The mine was opened and operated for three or four weeks in the fall of 1902, when the company leased it and a portion of the real estate to W. R. Hughes for a ten per cent. royalty on the coal mined. Shortly before this lease was made, appellee, John G. Matthews, became the owner of Harrison Hughes' stock and took part in the lease to W. R. Hughes. At an annual meeting of the stockholders of the company, after Matthews became the owner of Hughes' stock, J. D. Faulkner was elected president, J. F. Stanfill secretary, and J. D. Faulkner, J. G. Matthews, J. P. Gaddy and L. D. Stanfill, the wife of L. F. Stanfill, whose name their stock was in, were elected directors, and were holding that position on February 20th, 1906, at which time a call meeting was had. The only directors present at this meeting, however, were J. D. Faulkner, W. D. Faulkner, J. P. Gaddy and J. F. Stanfill, who allowed a claim amounting to $400.00

presented by J. D. Faulkner for services rendered the
company. D. W. Faulkner is a son of J. D. Faulkner.
He held only one and a fourth shares of stock in the
company. At another call meeting of the stockholders
and directors, when only the same persons as before
were present, J. F. Stanfill presented a claim for four
years service as secretary, at $25 a month, amounting
to $1,200.00, which was allowed. On March 4th, 1907,
when the same directors as before were present, and
also B. E. Gaddy, a son of J. P. Gaddy, who owned one
and a fourth shares of stock, a claim in favor of J. P.
Gaddy for services rendered as general manager of the
company for three and a half years at $50.00 a month,
was allowed.

About September, 1907, separate actions were
brought against J. D. Faulkner and L. F. Stanfill, and in
May, 1907, shortly after the allowance was made to
Gaddy, an action was brought against him and the other
directors, by John G. Matthews. The Ely Jellico Coal
Company was made a defendant in each of the actions.
The petition in each action alleged that the allowances
were made without authority; that they were fraudu-
lent; that they were made by a collusion and scheme to
which the three persons receiving the allowances were
parties; that the allowances were wrongfully made and
with the intention of injuring Matthews. It was also al-
leged that the persons to whom the allowances were made,
before they became unfriendly to Matthews, acted in the
positions named without any agreement or contract to
the effect they were to be paid for their services; that
there was nothing in the articles of incorporation or by-
laws which authorized them to make such disposition
of the company's funds; that they performed the ser-
vices without any intention of receiving pay therefor;
that the services they rendered were not worth more
than $50.00 each, and did not equal the value of the ser-
vices rendered the company by J. G. Matthews, which
were performed without charge; that the services ren-
dered by the persons named, were performed with the
sole intention of advancing the interest of the company
in which they were stockholders and with no expectation
of pay and such remained their intention until they be-
came unfriendly with Matthews. Defendants, appellants
here, denied all these allegations, and alleged that their
services were of greater value than the allowances made,
and that Matthews rendered no services of value for

which he was not paid. This was denied by reply. These actions were on the docket and in course of preparation when, at a regular quarterly meeting of the board of directors of the company, to-wit: January 1, 1909, J. D. Faulkner was allowed an additional sum for services rendered, amounting to $600.00, and J. P. Gaddy was allowed $750.00 for services as general manager, and J. F. Stanfill, secretary, was allowed $827.50. All these allowances were for services rendered after the first allowances were made. An amended petition was filed, setting forth these allowances and using, in substance, the same allegations with reference to them, as were used in the original petition.

The cases were consolidated and the lower court found that all the allowances were improperly made; directed the appellants to pay the sums received by them back into the treasury, with interest, and adjudged the costs of the actions against them. The judgment also allowed J. G. Matthews and J. M. Robison, who had purchased four shares of Matthews' stock while the action was pending, $1,000.00 with which to pay their attorneys for services rendered in the consolidated actions. Appellants complain strenuously of the lower court's action.

The record is very large; consisting of about fifteen hundred pages of testimony and two hundred pages of briefs, in addition to which we had the help of an oral argument. A great portion of the testimony has no bearing upon the issues involved and should not have been placed in the record. After Matthews purchased Hughes' stock, the company leased to him a considerable portion of the remainder of the property at seven cents per ton royalty, and built a railroad from the L. & N. R. R. track through Ely Hollow, by Hughes' tipple to a point where Matthews had erected a tipple on the property leased by him. It appears that all the parties interested in the coal mines got along peaceably until the fall of 1905, about the time the railroad was finished, at which time it appears that Matthews and J. P. Gaddy had an estrangement, and very soon after this J. D. Faulkner and his son also became embittered toward Matthews. This was very unfortunate, as the mines were making money; having up to the time of the trial paid over 200 per cent. on the stock, which was worth, at least, two dollars for one. The parties to this action seem to be fairly good citizens, but somewhat will-

ful and headstrong. They each gave heed to outside statements and rumors which caused their estrangements. The most of this record is made up in attempting to show that these estrangements were caused by the wrongs of the other in attempting to defraud the company out of its rights, and that neither party did any work of any consequence or value to the company, and each for himself trying to show that he did a great amount of labor which was of much value to the company. It would be useless to refer to the testimony in detail. It is sufficient to say, that each of the parties did valuable labor which redounded to the interest of the company. The lower court determined, however, that this labor was performed without any intention on the part of any of them to charge therefor, and that such continued to be their intention until their estrangements, and we are unwilling to disturb the lower court's finding thereon, as there are many circumstances and much testimony to sustain this view. After the leases to Hughes and Matthews and the completion of the railroad, there could not have been much labor performed by any of the officials. About all they had to do was to receive the monthly royalties and distribute the dividends.

The allowance of $1,000.00 to appellee's attorneys, to be paid out of the treasury of the company, was not too much for the services they rendered in the lower court and in this court, for, as the testimony and record show, they spent a great deal of time and labor in preparing the case. It is true, a great deal of the record consists of incompetent and irrelevant testimony, but both parties were equally guilty of placing it on the record. They, as individuals, and not the company, should have been compelled to pay for this redundant matter, but no motion was made in the lower court to have this done, and we are unwilling to pass upon the question for the first time here.

For these reasons, the judgment of the lower court is affirmed.